CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ELI J. COHEN (NYBN 5539226)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Eli.Cohen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 3:26-CR-00186 WHO |
| Plaintiff, | ) |
| | ) **MEMORANDUM IN SUPPORT OF UNITED** |
| | ) **STATES' MOTION FOR DETENTION** |
| v. | ) |
| | ) Hearing Date: May 12, 2026 |
| MARIO ROBINSON, | ) Hearing Time: 11:00 a.m. |
| | ) Courtroom E, 15th Floor |
| Defendant. | ) |
| | ) Hon. Thomas S. Hixson |

US' DETENTION MEMO
3:26-CR-00186 WHO

# TABLE OF CONTENTS

**INTRODUCTION** ……………………………………………………………......…..… 1

**FACTUAL AND PROCEDURAL BACKGROUND** ……………………………………… 1

    **A.   Robinson's Criminal History** ……………………………………………….. 1

        1.   2017 Sacramento Robbery ………………………...…………………………….. 1

        2.   2018 San Francisco Robbery Spree ……………………...…………………… 2

    **B.   The Instant Matter** ……………..………………………………………… 4

        1.   Pleasanton CVS Robbery …………………………….…..……………… 4

        2.   San Francisco Machinegun Shots-Fired Incident …………………...………………… 6

    **C.   Procedural Background** …………………………………………………..… 8

**LEGAL STANDARD** ……………………………………………………………… 8

**ARGUMENT** …………………………………………...…………………………… 9

    **A.   Danger to Any Other Person or the Community** ……………………..…………….....… 9

    **B.   Risk of Nonappearance** ……………………………………………………… 10

    **C.   Why New Bridge is Not Appropriate** …………………………………………... 11

**CONCLUSION** ………………………………………………………………… 12

**INTRODUCTION**

Defendant Mario Robinson ("Robinson" or the "defendant") has been charged by Indictment with one count of Robbery Affecting Interstate Commerce, in violation of 18 U.S.C. § 1951(a), one count of Illegal Possession of a Machinegun, in violation of 18 U.S.C. § 922(o)(1), and one count of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1).  Robinson's prolonged history of armed robbery, past failures to comply with court directives, and conduct in the instant matter show by clear and convincing evidence that he presents a danger to any other person or the community that no condition or combination of conditions can reasonably mitigate.  Additionally, his out-of-state ties, violations of probation and parole, and incentive to not appear for this case provide at least a preponderance of the evidence that he presents a risk of nonappearance that no condition or combination of conditions can reasonably mitigate.  For those reasons and as further explained below, the United States now moves this Court to order Robinson detained pending trial.

**FACTUAL AND PROCEDURAL BACKRGOUND**

**A.  Robinson's Criminal History**

Mario Robinson was born in Berkeley, California, and moved to Winnsboro, Louisiana as a child.  Now 34 years old, he has already amassed a staggering history of armed robbery and other crimes.  In October 2008, he was convicted of misdemeanor theft in Louisiana.  In May 2009, he was convicted of Simple Robbery in Louisiana and put on probation in lieu of a suspended sentence of five years in prison.  After pleading guilty, he failed to pay fines or appear for payment of fines, and had a bench warrant issued as a result, six times.  In December 2009, he was convicted of Simple Battery and misdemeanor theft in Louisiana, and in April 2010 his probation was revoked; the suspended five-year prison sentence was then imposed.  He was released to parole in August 2014.

1.    2017 Sacramento Robbery

Robinson moved back to California and quickly reverted to a life of crime.  On August 18, 2017, Robinson and multiple other men robbed a smoke shop in Sacramento, California.  Robinson, wearing a ski mask, pointed an apparent handgun at the clerk, and one of his accomplices zip-tied the clerk's hands.  Robinson withdrew garbage bags from his pants; the robbers took cash out of the register and filled up bags with cartons of cigarettes.  In total, they stole approximately $4,000 and approximately

US' DETENTION MEMO
3:26-CR-00186 WHO                                1

200 cartons of cigarettes.  The Sacramento Police Department ("SPD") identified Robinson through a combination of distinctive damage to his teeth, the necklace he was wearing at the time, his fingerprint on a garbage bag left at the scene, and statements he made on jail calls.  He ultimately pleaded guilty to the robbery in October 2021, receiving a one-year jail sentence, but only after he committed the below-described string of robberies, and attempted another, in San Francisco.



*Robinson during Sacramento robbery*

### 2.    2018 San Francisco Robbery Spree

Through mid-June to early July 2018, Robinson engaged in a string of robberies, and attempted another, of San Francisco convenience/liquor stores using what appeared to be a handgun.  On June 16, 2018, he hid behind a car before entering a 7-11 at 43 Drumm Street wearing a hooded sweatshirt and ski mask and carrying what appeared to be a silver pistol.  Robinson pointed the pistol at the store clerk



43 DRUMM
6/16/18

and told him to put his hands up, before walking behind the counter and demanding the clerk open the cash register. The clerk reported thinking Robinson was going to kill him. Robinson took the money out of the cash drawer and ordered the clerk out of the store at gunpoint.

Less than a week later, on June 22, 2018, Robinson entered a different 7-11, this time near the Ingleside neighborhood, wearing a black North Face jacket, a black mask, and carrying an apparent black and silver firearm. He pointed the gun at the clerk and demanded the clerk open the register or he would shoot. One cash drawer was already open, and the clerk opened the other. Robinson grabbed approximately $1,000 in cash before further demanding and taking a carton of cigarettes.

Just six days after that, on June 28, 2018, Robinson robbed yet another 7-11, this time near Union Square. He walked in dressed in all black, carrying what appeared to be a two-toned semiautomatic handgun. Robinson threatened to shoot the clerk if the clerk did not give him all the money in the store. Fearing being shot, the clerk opened the cash register. A customer preparing to pay feared for his life and ducked around the counter. Robinson emptied the cash register into a bag, before taking a carton of cigarettes and fleeing. Just two days later, on June 30, Robinson committed another gunpoint robbery, this time of a store on Market Street. He brandished a firearm in the clerk's face and took approximately $300 out of the register before running out of the store. The victim told police he had recognized the robber's voice from a previous encounter.

On July 9, 2018, Robinson attempted another gunpoint robbery of the same store on Market Street. Robinson entered the store and pulled an apparent handgun from his waistband. The clerk attempted to retreat; Robinson grabbed him and racked the slide of the gun. Robinson then dragged the clerk by the collar to the register and demanded the clerk open it. Another employee came to see what was happening, and Robinson fled. About a week later, on July 17, 2018, the San Francisco Police Department ("SFPD") arrested Robinson and searched both his person and residence.

SFPD recovered a silver-and-black replica handgun from a bag Robinson was carrying, and two black ski masks, a black North Face jacket, and black sweatpants from his residence. In a mirandized statement, Robinson stated he started committing robberies in June 2018 and chose 7-11 stores because they had no security. The San Francisco County District Attorney's Office ultimately charged him with five counts of second-degree robbery and one count of attempted burglary. Robinson pleaded guilty to



Image #9 (Imitation Firearm covered from Suspect Robinso Vilson by San Francisco Police Detectives; connecting him to a 711 Convenience Store Robbery in 2018 (SFPD Report #180447938))

*Replica handgun recovered from Robinson*

one count of second-degree robbery and was sentenced to five years prison in March 2021.  He subsequently pleaded guilty to the Sacramento robbery and was sentenced to one year jail.  He was paroled from state prison in August 2022.  He violated parole at least eight times in the ensuing three-and-a-half years, including by committing the crimes charged in the instant Indictment.

**B. The Instant Matter**

  1. <u>Pleasanton CVS Robbery</u>

  On July 9, 2024, around 9:31 pm, an employee of a CVS Pharmacy in Pleasanton, CA ("Victim 1") was vacuuming the store when Robinson came in wearing all black and a ski mask, pulled out an apparent AR-style rifle, and told her to come on.  Robinson followed Victim 1 behind the counter, where

 

she opened the drawer to one of the cash registers.  Robinson grabbed the entire cash drawer, which contained approximately $250, and put it in a bag he was holding.  Robinson told Victim 1 to give him the contents of the other cash register, but it was empty.  Victim 1 asked Robinson not to hurt her, and he told her she would be okay.  Another employee approached to see what was going on, and Robinson

demanded to know where bigger bills were, before ultimately fleeing the store. The employees called the Pleasanton Police Department ("PPD") and officers arrived shortly afterward.  The alarm company with which CVS contracted informed PPD that a GPS tracking device hidden within the cash drawer was moving toward a nearby BART station.  While police were on route to that station, the alarm company informed them that the tracking device was heading westbound, likely on a train.

PPD had the train stopped at the next station, where Robinson got off wearing different clothes than he had worn during the robbery, and carrying a black and purple duffel bag.  He walked through the station and exited with the duffel bag.

  

*Robinson walking through station*          *Robinson with duffel bag*          *Robinson after arrest*

PPD responded to that BART station.  They saw Robinson running through a nearby parking lot without the duffel bag.  PPD chased and detained him, and searched along his flight path for the duffel bag, finding it in a bush.  It bore a luggage tag in someone else's name and contained the clothes the robber had been wearing, an AR-style paintball rifle, and the cash drawer from CVS.

  

*Recovered duffel bag*          *Officer recovering replica rifle*          *Replica rifle*

The rifle looked remarkably similar to a real AR-style assault rifle.  Robinson was charged with

second-degree robbery in Alameda County Superior Court.  Less than three weeks after being arrested, he was released on his own recognizance and ordered to appear in person for all court dates.  He appears to have been taken back into custody in August 2024, and again released on his own recognizance.  By October 2024, he was accepted into Mental Health Diversion.  The case then dragged along.  Robinson was repeatedly allowed to appear remotely and various progress reports were submitted.  The District Attorney's Office repeatedly moved to terminate diversion; all of these motions were denied.  Robinson was supposed to make yet another appearance on February 25, 2026.  For the reasons described below, he did not appear in court that day.

     2.  <u>San Francisco Machinegun Shots-Fired Incident</u>

  On February 25, 2026, around 3:26 a.m.[1], Robinson walked down Turk Street in San Francisco toward the intersection with Taylor Street, in the direction of a group of people congregating in front of a convenience store.  He raised a Glock model 22 .40 caliber handgun and began firing in the direction of the group.  He fired multiple shots, one at a time, racking the slide of the handgun between shots as if the gun was failing to cycle properly.  Most of the group of people fled in various directions.  Some simply tried to avoid being hit, including a man in a wheelchair cowering as Robinson was firing beside him.  After firing multiple single shots and racking the slide multiple times, Robinson fired a multiple-shot burst, appearing to lose control of the weapon as he was spraying gunfire.

 

  With the gun empty, Robinson put it in his waistband and casually began walking back the way he had come.  SFPD officers on patrol nearby heard the shots and responded almost immediately.  As

---

[1] Based on comparison of the time of the incident and the time of arrest, as well as time stamps on body-worn camera video and other surveillance video, that the time stamp on the convenience store video is incorrect.

they pulled on scene, Robinson began running and turned into a nearby parking lot.  Officers chased him into the parking lot, and he discarded the handgun under a parked car.  Officers briefly lost sight of him but came upon him quickly.  Video of Robinson walking away and running from the scene, compared with his appearance when arrested, clearly demonstrate his identity as the shooter.

 

A bystander told police where Robinson had disposed of the gun, and SFPD found it under the parked car.  Upon inspection, it was fitted with a machinegun conversion device commonly referred to as a "switch."  SFPD recovered seven spent shell casings, three unfired rounds, and a bullet fragment from the scene.

 

The assigned SFPD investigator had SFPD's firearm and toolmark unit test the gun's operability, and it was found to be operable, and to fire in full-automatic mode only.  Subsequent DNA testing revealed very strong support for inclusion of Robinson's DNA on the grip of the gun, and moderate support for inclusion of his DNA on the magazine within the grip.  Additionally, the firearm and toolmark unit identified the spent shell casings and bullet fragment from the scene as having been fired from the recovered firearm, and gun shot residue ("GSR") testing revealed GSR particles were on

Robinson's hands at the time of his arrest.

In addition to his criminal history, Robinson has previously used the alias "Mario Robinson Wilson" and other variations of his true name, and when arrested by PPD in July 2024, originally gave police an incorrect date of birth and said his name was "Mario Robertson."

### C. Procedural Background

On March 11, 2026, Judge Lisa J. Cisneros authorized a Criminal Complaint charging Robinson with one count of Illegal Possession of a Machinegun, in violation of 18 U.S.C. § 922(o)(1), relating to the February 2026 incident. The San Francisco District Attorney's Office dismissed its case and Robinson was taken into custody pursuant to warrants from Alameda County for the robbery case and a parole violation.

On April 23, 2026, a grand jury returned the instant Indictment. The Alameda County District Attorney's Office dismissed its case, and Robinson was taken into federal custody. He made his initial appearance on April 29, 2026, and the government moved for detention. A detention hearing was set before this Court for May 12, 2026.

### LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk–the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to

drug or alcohol use, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The Rules of Evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f)(2)(B). It is well settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in an offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g., United States v. Salerno*, 481 U.S. 739, 743 (1987).

## ARGUMENT

Robinson's extensive history of armed robbery, his incessant probation and parole violations, and the egregious conduct underlying the instant case all demonstrate that he presents a danger to any other person or the community that no condition or combination of conditions can reasonably mitigate. Additionally, his prior failures to comply with court conditions, ties to Louisiana, his ability and willingness to commit crime in another judicial district, and the significant penalty he faces in this matter all show there is at least a preponderance of the evidence that he presents a risk of nonappearance that no condition or combination of conditions can reasonably mitigate.

### A. Danger to Any Other Person or the Community

The nature and circumstances of the charged offenses, and the weight of the evidence that Robinson committed them, in conjunction with Robinson's criminal history and violations of supervision conditions, provide clear and convincing evidence of his danger to any other person or the community, and the inadequacy of conditions to reasonably mitigate it. He has committed at least seven robberies over approximately fifteen years, most at apparent-gunpoint. The fact that he often used an imitation or replica firearm is of little moment given how they appeared to the people he was robbing. Subsequent to his first robbery conviction, his sentence was suspended and he was put on probation. He quickly and repeatedly violated probation and was sentenced to five years in prison. He was paroled in his early twenties, moved back to California, and only got worse. He worked with a group to bind and

US' DETENTION MEMO
3:26-CR-00186 WHO                           9

rob a store clerk at apparent-gunpoint. Less than a year after that, he engaged in a string of robberies around San Francisco. He was paroled again, this time in his early thirties.

While on parole from his most recent prison sentence, he robbed a CVS with what looked like an assault rifle, then fled from police. Despite all of this, and his various other parole violations, he was inexplicably placed into mental health diversion. While that was pending, the case was repeatedly continued over approximately fourteen months, and Robinson was regularly allowed to appear remotely. Rather than avail himself of this unwarranted leniency, and the opportunity to divert his life from the destructive path it had been traveling for the preceding fifteen years, he instead sprayed a machine pistol in the direction of a group of people on a San Francisco street. It seems due to luck and Robinson's apparent inability to control the gun that no one appeared to have been struck by a bullet.

Robinson has time and again proven himself to be unrepentant and an acute danger to both those he targets and those who happen to be near him on the street. He was repeatedly demonstrated an unwillingness or inability to conform his behavior while under court conditions. Criminal justice systems in multiple states have shown him leniency: through a suspended sentence, parole, and diversion; he has repeatedly squandered these opportunities by violating conditions and committing further crimes. There is absolutely no reason to believe that would change now, and it is incumbent upon the Court to protect the people of this district from the extreme danger he presents.

### B. Risk of Nonappearance

In addition to the obvious risk to life and limb he presents to his chosen victims and the community at large, there is also at least a preponderance of the evidence that Robinson presents a risk of nonappearance that no condition or combination of conditions can reasonably mitigate. For one, he has connections halfway across the country, having lived – and committed various crimes – in Louisiana. He has also proven himself willing and able to commit crimes in a neighboring judicial district, as evidenced by his robbery in Sacramento.

As detailed above, the evidence against Robinson in the instant matter is very strong. He was tracked from the CVS robbery with a GPS tracker and recorded walking through and exiting a BART station with a bag containing the clothes, weapon, and proceeds of the robbery. He is on video shooting the machinegun, concealing it in his waistband, and running away. A witness observed him discard the

gun, which had his DNA on it.  Toolmark testing links the shell casings from the scene to that gun, and Robinson had GSR on his hands.  He therefore has a high likelihood of conviction.  Given the facts of this case and his criminal history, he faces a very significant guidelines range.  This appears to be his first federal case, and the severe potential penalty gives him a strong incentive to make himself scarce.  *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (strong evidence of guilt "makes it more likely he will flee").  When viewed in light of his repeated violations of probation and parole throughout his criminal career, there is at least a preponderance of the evidence that the risk of nonappearance he presents cannot be reasonably mitigated by further conditions.

### C.  Why New Bridge is Not Appropriate

The defense has requested that Robinson be evaluated for admission to New Bridge for a substance abuse treatment program, in lieu of detention.  This would be wholly inappropriate for a host of reasons.  First, it is not clear that any representations the defendant may make regarding drug or alcohol dependency should be taken at face value.  When being interviewed for the Presentence Investigation report ("PSI") attendant to his 2021 San Francisco robbery conviction, he told probation that he consumed alcohol on weekends, and that although he was a daily marijuana user, he did "not believe that he has an illicit substance abuse problem and [did] not believe he needs to participate in a substance abuse treatment program."[2]  Any protestations to the contrary should be taken for what they are: a self-serving attempt to avoid pretrial detention.

Second, there is ample reason to believe Robinson would not comply with New Bridge's stringent requirements even if he would in fact benefit from drug treatment.  He has a protracted history of violating conditions of supervision.  Third, even were he a good candidate for treatment – which he is not – he presents such an acute danger that the Court should not take such a risk with the community's safety.  Robinson violating any conditions the Court could impose could easily result in catastrophic, irreversible consequences.  Releasing a person like Robinson under any set of conditions, no matter how stringent, would unleash an intolerable risk of violence into the community.

---

[2] *People v. Mario Monearl Robinson*, Case No. 229586, Presentence Investigation Report at 7.

US' DETENTION MEMO
3:26-CR-00186 WHO                                11

**CONCLUSION**

For the foregoing reasons, there is clear and convincing evidence that Mario Robinson presents a danger to any other person or the community that no condition or combination of conditions can reasonably mitigate, and at least a preponderance of the evidence that he presents a risk of nonappearance that no condition or combination of conditions can reasonably mitigate. The government respectfully requests that the Court order Robinson detained pending trial.

DATED:  May 11, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Eli J. Cohen*
ELI J. COHEN
Assistant United States Attorney

US' DETENTION MEMO
3:26-CR-00186 WHO                    12